COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| ADRIAN HERRERA, | § | No. 08-19-00281-CR |
|---|---|---|
| Appellant, | § | Appeal from the |
| v. | § | 409th Judicial District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20160D04875) |

**O P I N I O N**

Appellant Adrian Herrera appeals from his convictions for three felony offenses: engaging in organized criminal activity--murder; tampering/fabricating physical evidence with intent to impair a human corpse; and tampering/fabricating physical evidence with intent to impair as to a carpet. In a related case that we decide today, he also appeals his conviction for engaging in organized criminal activity--aggravated kidnapping. In his sole issue in this appeal, Appellant argues that the trial court erred by failing to instruct the jury on the accomplice-witness rule, thereby depriving him of a fair and impartial trial.

We affirm the convictions below.

# I. BACKGROUND

## A. Factual Background

This case arises out of a series of events that took place in September 2016, which culminated in the death of Anthony Trejo followed by the dismemberment and disposal of Trejo's body. From the proceedings below, we gather that the persons involved in these events were regular participants in the sale and use of methamphetamine. The evidence presented at trial showed the facts to be as follows:

On the night of September 9, 2016, Appellant and Isaac Lujan[1] temporarily exchanged vehicles. When Isaac returned home, he had a discussion with several other people, including James Hall, about possibly driving to Los Angeles to purchase methamphetamine. The next morning, Isaac and Hall decided to pawn some tools they had found in Appellant's SUV for gas money.

Later that day, Hall picked up Janet Lucero, an acquaintance, and Trejo, whom he had not previously met, and drove them to Isaac's house. Trejo then pulled a gun on Hall, forced him into the passenger seat, and drove to a car wash where Appellant was waiting in his SUV, along with Roberto Favela and Erlinda Lujan. Appellant and Trejo had a conversation in Spanish, then Appellant told Trejo to follow him to 8912 Ortega Court. When they arrived, Hall was taken inside, tied up, and beaten by three men--Favela, Steven Ramirez, and Phillip Esquer--while being questioned about stealing the tools. Several hours later, Hall was transported to Appellant's apartment at 7361 Alameda, where he was held captive by Appellant and Erlinda for the next two days before being released.

---

[1] This case involves two unrelated individuals with the last name Lujan. For clarity, we will refer to Isaac Lujan as "Isaac" and Erlinda Lujan as "Erlinda."

During that time, Trejo and Isaac were also brought to Appellant's apartment and restrained. Trejo was put into Appellant's bathtub, with his hands and feet bound by audio-video cables. He had been beaten very severely. He was extremely bloody, incoherent, bubbling and foaming out of his nose, unable to speak, and struggling to breathe.

On the night of September 16, 2016, Appellant and some of his acquaintances--Lucero, Erlinda, and George Bonales--met up with Michael Aceto in the parking lot of a warehouse on Industrial Street. Aceto was a daily methamphetamine user who was homeless and occasionally sold drugs to make money. Aceto would get the drugs from a man he knew as "Frank," who in turn obtained them from Appellant (whom Aceto knew as "The Kid"). Aceto had never met or heard of Trejo.

That night, Frank told Aceto that he "needed to help out The Kid." When Aceto arrived at the warehouse parking lot, Appellant told Aceto that he needed to dispose of some "trash" that was in the back of a black Lincoln Navigator. Aceto drove the Navigator out to the desert near Railroad Drive, followed by Appellant and Lucero riding on a motorcycle, and Bonales and Erlinda driving a pickup truck. The three vehicles stopped at a Valero gas station on the way. Upon reaching the destination, Aceto opened the back of the Navigator and found several large trash bags stacked on a flat piece of cardboard. He slid the cardboard with the trash bags out of the vehicle and left the scene, leaving Bonales and Erlinda to bury the bags.[2] Appellant, Lucero, Bonales, and Erlinda stopped at a 7-Eleven on Sun Valley, near Railroad Drive, on their way back into town.

Aceto later directed police to the location where he left the trash bags, which were exhumed and found to contain the remains of Trejo's dismembered corpse. Aceto was arrested and charged with tampering/fabricating physical evidence with intent to impair a corpse. He reached a plea

_____

[2] Appellant and Lucero had apparently turned back when the vehicles left the paved road and turned onto loose dirt.

3

deal in which he agreed to testify against Appellant in exchange for a suspended sentence of 10 years' probation.

A search warrant executed at 8912 Ortega Court revealed multiple bloodstains, as well as a large amount of stained carpet, foam under-carpet padding, and wooden carpet tack strips, all of which had been ripped up from the floor. Several of the bloodstains were found to be consistent with a person being struck repeatedly, at or near the level of the floor. DNA-testing the blood stains revealed multiple matches to Trejo; others matched or were inconclusive as to Favela, Ramirez, Esquer, and several others.

## B. Procedural History

Appellant was charged with engaging in organized criminal activity as to Trejo's murder;[3] tampering/fabricating physical evidence with intent to impair a human corpse; and tampering/fabricating physical evidence with intent to impair as to the carpet.[4] The case was tried to a jury. Hall and Aceto both testified at trial. The jury found Appellant guilty on all three counts. The trial court sentenced Appellant to 60 years' confinement for the organized criminal activity charge, 20 years' confinement for tampering with Trejo's corpse, and 10 years' confinement for evidence tampering as to the carpet, with all sentences to run concurrently.

On appeal, Appellant challenges his conviction of all charges, arguing in a single appellate issue that the trial court erred by failing to include an accomplice-witness instruction in its charge to the jury. Appellant contends that Aceto and Hall were both accomplices, and that the lack of an accomplice-witness instruction deprived him of a fair and impartial trial.

---

[3] The murder combination consisted of Appellant, Erlinda, Favela, Ramirez, and Romuldo Trujillo.

[4] Appellant was also charged by separate indictment with two counts of engaging in organized criminal activity-- aggravated kidnapping with regard to Isaac and Hall. The two cases were consolidated and tried together.

4

## II. STANDARD OF REVIEW

When analyzing claimed jury charge error, we utilize a two-pronged test. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005) (en banc); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (en banc). The first prong requires us to determine whether error exists. *See Ngo*, 175 S.W.3d at 743. If no error is found, then the analysis ends; however, if charge error is found, the error is analyzed for harm. *See Almanza*, 686 S.W.2d at 171.

The amount of harm necessary to warrant a reversal depends on whether the accused objected to the jury charge, and thereby preserved the error. *Ngo*, 175 S.W.3d at 743; *Almanza*, 686 S.W.2d at 171; *see also Neal v. State*, 256 S.W.3d 264, 278 (Tex.Crim.App. 2008). If the error was preserved by a timely objection, we review the record to determine if the error caused the accused "some harm." *Ngo*, 175 S.W.3d at 743; *Almanza*, 686 S.W.2d at 171. However, if no objection was lodged, as Appellant concedes here , we review the unpreserved jury charge error for egregious harm. *Almanza*, 686 S.W.2d at 171. Egregious harm is actual, rather than theoretical, and must be of such a nature that it deprived the accused of a fair and impartial trial or otherwise vitally affected the accused's defensive theory at trial. *See Villarreal v. State*, 453 S.W.3d 429, 433 (Tex.Crim.App. 2015); *Cosio v. State*, 353 S.W.3d 766, 777 (Tex.Crim.App. 2011). "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villarreal*, 453 S.W.3d at 433, *quoting Reeves v. State*, 420 S.W.3d 812, 816 (Tex.Crim.App. 2013). In making an egregious harm determination, we examine (1) the entire charge; (2) the state of the evidence, including contested issues and the weight of the evidence; (3) arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *See Allen v. State*, 253 S.W.3d 260, 264 (Tex.Crim.App. 2008).

### III. THE ACCOMPLICE-WITNESS RULE

A criminal defendant cannot be convicted based on the testimony of an accomplice unless the accomplice's testimony is corroborated by other, non-accomplice evidence "tending to connect the defendant with the offense committed." TEX.CODE CRIM.PROC.ANN. art. 38.14; *see Druery v. State*, 225 S.W.3d 491, 498 (Tex.Crim.App. 2007). If a testifying witness is an accomplice, or if there is conflicting evidence as to whether the witness may be an accomplice, the trial court must instruct the jury accordingly. *Ash v. State*, 533 S.W.3d 878, 886 (Tex.Crim.App. 2017).

An accomplice is someone who participated before, during, or after the commission of the offense with which a criminal defendant is charged, to the extent that the person could be prosecuted for the same or a lesser-included offense. *Herron v. State*, 86 S.W.3d 621, 631 (Tex.Crim.App. 2002) (en banc). To be considered an accomplice, a person can be subject to prosecution as a principal, as a direct party, or as a co-conspirator; however, there must be sufficient evidence to connect the person to the offense "as a blameworthy participant." *Ash*, 533 S.W.3d at 882 n.4. Under the law of parties, a person may be subject to prosecution if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense," or if, "in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators . . . [and] the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy." TEX.PENAL CODE ANN. § 7.02(a)(2), (b).

A witness is an accomplice as a matter of law if either (1) the witness has been charged with the same offense as the defendant or a lesser-included offense, even if the charges were

subsequently dismissed in exchange for testimony against the defendant,[5] or (2) the evidence is uncontradicted or so one-sided that no reasonable juror could conclude that the witness was *not* an accomplice. *Ash*, 533 S.W.3d at 886. When a witness is an accomplice as a matter of law, the trial court must instruct the jury about the need for evidence to corroborate the witness' testimony. *Id.*

If neither of the above criteria are met but the record contains conflicting or inconclusive evidence that raises a question regarding whether the witness may have been an accomplice, the trial court should submit the issue to the jury to determine whether the witness was an accomplice as a matter of fact. *Id.* at 884. When there is no evidence to suggest that a witness was an accomplice, the defendant is not entitled to an accomplice-witness instruction. *See Zamora v. State*, 411 S.W.3d 504, 513 n.4 (Tex.Crim.App. 2013).

## IV. DISCUSSION

Appellant contends that Hall was an accomplice as a matter of fact and Aceto was an accomplice as a matter of law, presumably as to all counts, and that the trial court egregiously erred by failing to include accomplice-witness instructions in the jury charge.

The State concedes that Aceto was an accomplice-witness as to the corpse-tampering charge only, and that the trial court erred in failing to include an accomplice-witness instruction for that count. However, the State asserts that the error was not egregious, as the corroborating evidence was sufficient to sustain Appellant's conviction on that count. The State further contends that Aceto was not an accomplice-witness to any of Appellant's other offenses, and Hall was not an accomplice-witness to any of Appellant's offenses at all.

---

[5] If the charges against the witness were dismissed for another reason, the witness is no longer an accomplice as a matter of law--but, depending on the evidence, may still be an accomplice as a matter of fact. *Ash*, 533 S.W.3d at 884.

We agree with the State.

### A. James Hall Was Not an Accomplice to Any Charged Offense

Hall was not an accomplice to any of the offenses of which Appellant was convicted, either as a matter of fact or as a matter of law. Hall was not charged, and could not have been charged, with any of these offenses or any lesser-included offenses. There was no evidence presented at trial that raised any question as to whether Hall might have been a "blameworthy participant" in any of the offenses of which Appellant was convicted. *Ash*, 533 S.W.3d at 882 n.4.

There is no evidence to suggest that Hall participated in any way in Trejo's murder or the preceding events, the disposal of Trejo's corpse, or any attempts to clean or remove the carpet at 8912 Ortega. In fact, Hall had been kidnapped (by Trejo) and was being held against his will at Appellant's apartment during the timeframe that Trejo was being beaten elsewhere. And although there was some overlap in the time periods that Hall and Trejo were held captive at Appellant's apartment, Hall did not participate in, solicit, encourage, direct, aid, or attempt to aid in any criminal conduct regarding Trejo. Mere presence at the location where a crime occurs does not make one an accomplice. *Druery*, 225 S.W.3d at 498. It appears that Trejo was still alive-- although barely--when Appellant released Hall, and there is no evidence indicating that Hall ever returned to either the Ortega or Alameda locations afterwards.

There is also no evidence that Hall was involved in a conspiracy with Appellant to commit a felony tied to Trejo's murder. Appellant argues that Hall's testimony about possibly going to Los Angeles with Isaac to purchase drugs is evidence that Hall was involved in a "drug enterprise" combination along with Appellant, Favela, Ramirez, Erlinda, Bonales, and others. This argument fails for two reasons. First, the only evidence of any drug-related combination involving Hall was limited to Isaac and the other two men who discussed the potential drug run to Los Angeles. Although Hall could arguably have been subject to prosecution for this unrealized drug trafficking

8

conspiracy had he not been granted immunity, there is no evidence that Appellant--or any of the other listed individuals--was ever involved. Second, even if Appellant *had* been involved in that combination, it would still constitute a separate, unrelated offense that could not cause Hall to be an accomplice-witness in this case. *See Zamora*, 411 S.W.3d at 512 n.4. There is no evidence whatsoever to suggest that Trejo's murder was committed in the course of an attempt to carry out a conspiracy to purchase methamphetamine in Los Angeles.

### B. Michael Aceto Was an Accomplice to the Corpse-Tampering Count Only

As for Aceto, we first address whether he was an accomplice to the counts of engaging in organized criminal activity as to Trejo's murder or tampering/fabricating evidence as to the carpet.

Aceto was not charged with either of these offenses, and there is no basis upon which he could have been prosecuted for these or any lesser-included offenses. Accordingly, Aceto was not an accomplice as a matter of law to either of these counts. *Ash*, 533 S.W.3d at 886.

Nor did the evidence at trial raise an issue of whether Aceto might have been an accomplice to either of these offenses or any lesser-included offenses as a matter of fact. There is no evidence connecting him to any such offense as a "blameworthy participant." *Ash*, 533 S.W.3d at 882 n.4. Aceto's only involvement in this case was limited to the disposal of Trejo's body, and Texas law is clear that merely assisting in the moving of a murdered corpse does not make a witness an accomplice to the murder. *Smith v. State*, 721 S.W.2d 844, 851 (Tex.Crim.App. 1986). There is no evidence to even suggest that Aceto participated in, solicited, encouraged, directed, aided, or attempted to aid in Trejo's murder or in any attempts to clean or remove the carpet at 8912 Ortega. Aceto testified that he had never met or even heard of Trejo prior to his participation in the police investigation for this case.

There is also no evidence that Aceto was involved in any conspiracy to commit a felony during which Trejo's murder foreseeably occurred. Aceto did testify that he occasionally sold

drugs that he obtained from Frank, who got them from Appellant. Had Aceto not been granted immunity in exchange for his testimony, he arguably could have been subject to prosecution for distribution of methamphetamine in combination with Appellant and Frank. However, none of the charges in this case are related to methamphetamine distribution, and there is no indication that Trejo's murder was committed in the course of an attempt by Appellant, Aceto, or Frank to carry out a conspiracy to distribute methamphetamine. Complicity with a defendant in an unrelated offense does not make a person an accomplice-witness. *Zamora*, 411 S.W.3d at 512 n.4.

However, Aceto was indicted for, and pled guilty to, the offense of tampering with Trejo's corpse. Appellant was charged and convicted of the same offense. Aceto was thus an accomplice-witness as a matter of law as to this offense. *Ash*, 533 S.W.3d at 886.

### C. The Jury Charge Was Erroneous on the Corpse-Tampering Count Only

A trial court has a duty to prepare a jury charge that accurately sets out the law applicable to the case. TEX.CODE CRIM.PROC.ANN. art. 36.14. The "law applicable to the case" includes an instruction on the accomplice-witness rule when the issue is raised by the evidence. *Zamora*, 411 S.W.3d at 513. Even if an accomplice-witness instruction is not requested, the trial court must include it *sua sponte* if the evidence has raised the issue. *Id.* at 512.

The jury charge in this case did not include any instructions on the accomplice-witness rule. Appellant did not request an accomplice-witness instruction or object to the omission of such an instruction. However, because Aceto was an accomplice as a matter of law to the offense of tampering with Trejo's corpse, the trial court should have instructed the jury about the need for evidence to corroborate Aceto's testimony on that count, and the failure to do so was error. *Herron*, 86 S.W.3d at 631. The State concedes that the charge erroneously failed to include an accomplice-witness instruction regarding Aceto, as to the corpse-tampering count only.

10

As neither Hall nor Aceto was an accomplice to the offenses of engaging in organized criminal activity as to Trejo's murder or tampering/fabricating physical evidence with intent to impair as to the carpet, Appellant was not entitled to accomplice-witness instructions on either of these counts. *Zamora*, 411 S.W.3d at 513 n.4. Therefore, the trial court did not err in omitting the instructions on those counts.

### D. The Error Did Not Result in Egregious Harm

We now consider whether the trial court's failure to instruct the jury about the accomplice-witness rule on the corpse-tampering count deprived Appellant of a fair and impartial trial or otherwise vitally affected his defensive theory at trial, thereby constituting egregious harm. *See Villarreal*, 453 S.W.3d at 433. We find that it did not.

The accomplice-witness rule requires an accomplice's testimony to be corroborated by other evidence "tending to connect the defendant with the offense committed." TEX.CODE CRIM.PROC.ANN. art. 38.14. Accordingly, non-accomplice evidence can render the erroneous omission of an accomplice-witness instruction harmless. *Herron*, 86 S.W.3d at 632. The non-accomplice evidence does not need to prove all the elements of the alleged offense; rather, the corroborating evidence is sufficient if, after eliminating the accomplice testimony from consideration, there is any other evidence which "tends to connect" the defendant with the crime. *Hernandez v. State*, 939 S.W.3d 173, 176 (Tex.Crim.App. 1997) (en banc). Under the egregious-harm standard, failure to include an accomplice-witness instruction is generally harmless, unless the corroborating evidence is "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Herron*, 86 S.W.3d at 632 (internal citation and quotation marks omitted).

11

After examining the record in this case, we find that, after putting Aceto's testimony aside, there is sufficient corroborating evidence tending to connect Appellant to the offense of tampering/fabricating physical evidence with intent to impair Trejo's corpse, as follows:

- James Hall testified that Trejo, severely beaten and barely alive, was brought to Appellant's apartment and put into the bathtub.

- A photograph recovered from Appellant's phone, dated September 12, 2016, depicts Trejo lying in a bathtub in a bloodied state. The walls and floor in the background of that photo appear to match the photos taken by police in the bathroom of Appellant's apartment, and clearly do *not* match the photos taken by police in either bathroom at 8912 Ortega.

- Testimony from Officer Dexter Brown and an impound slip established that Appellant had been pulled over while driving a black Lincoln Navigator on September 3, 2016.

- Appellant's cell phone records from September 16 and 17, 2016 place him in the general area of his apartment at 11:20 p.m.; in the area of the warehouse on Industrial Avenue at 11:28 and 11:30 p.m.; in the area of the Valero at 11:52 p.m.; in the area of Railroad Drive at 12:06 a.m.; in the area of the 7-Eleven on Sun Valley from 12:46 a.m. to 1:00 a.m.; and back in the area of his apartment on Alameda at 2:05 a.m.

- Surveillance video from the Valero station on the night of September 16, 2016 shows the three cars in the caravan to the desert arriving at approximately 11:45 p.m.; Aceto in a black Lincoln Navigator, Appellant and Lucero on a motorcycle, and Bonales and Erlinda in a pickup truck, and also shows Appellant and Aceto inside the convenience store.

- Surveillance video from the 7-Eleven at around 12:52 a.m. on September 17, 2016 depicts Appellant, Lucero, Bonales, and Erlinda inside the store for several minutes.

- Trejo's dismembered body was disinterred and recovered by El Paso Police near the 11600 block of Railroad Drive.

After reviewing this non-accomplice evidence, we find that it is reliable and tends to connect Appellant to the offense of tampering/fabricating physical evidence with intent to impair Trejo's corpse, and that it is not "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Herron*, 86 S.W.3d at 632.

Nor do the opening or closing arguments of counsel suggest that the omission of an accomplice-witness instruction on this count had any effect on the outcome. In fact, during closing Appellant's counsel came right out and admitted: "I don't think there is any doubt whatsoever that

12

[Appellant] did, in fact, participate and did commit the offense of Tampering with a Corpse. All right. You heard that evidence. It is clear. It is clear that that happened."

After reviewing the record of the trial as a whole, there is no indication that the trial court's error affected the outcome of this case. The non-accomplice evidence presented by the State was sufficient to reliably corroborate Aceto's testimony, and Appellant's counsel even appears to have conceded that Appellant was guilty of tampering with Trejo's corpse. The trial court's error did not deprive Appellant of a fair and impartial trial and did not undermine his defensive theory at trial. Accordingly, there was no egregious harm.

## V. CONCLUSION

We hold that (1) the trial court erred by failing to instruct the jury on the accomplice-witness rule as to the count of tampering/fabricating physical evidence with intent to impair a corpse; (2) the error was not egregiously harmful; and (3) the trial court did not err by omitting accomplice-witness instructions on either of the remaining counts.

Appellant's sole issue on appeal is overruled, and the convictions below are affirmed.

JEFF ALLEY, Justice

March 9, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)

13